IN RE APPLICATION OF GEORGE FARM CO.
GEORGE FARM CO., APPELLANT, V. NORTHEAST NEBRASKA
TELEPHONE COMPANY, APPELLEE.
443 N.W.2d 285

Filed July 28, 1989.   No. 87-1054.

Kurt T. Rager, of Rager & Hohenstein, P.C., for appellant.

Robert G. Scoville, of Ryan & Scoville, for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

PER CURIAM.
The applicant, George Farm Co., a farm corporation, appeals from an order of the Nebraska Public Service Commission denying its request to have its property removed from the service area of the Northeast Nebraska Telephone Company's Jackson exchange and to be placed within the service area of Northwestern Bell Telephone Company's South Sioux City exchange.

In an appeal from an order of the Public Service Commission, this court examines the record to determine whether the commission acted within the scope of its authority and whether the evidence shows that the order in question was unreasonable or arbitrary. If there is evidence to sustain the findings and action of the commission, this court cannot intervene. *In re Application of Overland Exp.*, 229 Neb. 524, 428 N.W.2d 166 (1988).

The applicant farm corporation is located on a parcel of land in northeast Nebraska consisting of approximately 2,200 to 2,300 acres. The land is divided approximately in half by the boundary line between the two telephone companies servicing the area. The land west of the boundary line is within

Northeast's Jackson service area, while the land east of the boundary line is within Northwestern Bell's South Sioux City service area.

There are three residences on the applicant's property. Leland George, president of the corporation, lives in one house, and Bradley Altena, a farmer and mechanic employed by the applicant, lives in a house just to the west, both of which are within the area designated for service by Northeast's Jackson exchange, but within one-fourth mile from the boundary line of Northwestern Bell to the south and east. A trailer home on the property, which at the present time is unoccupied but apparently still has a telephone line available, is within the South Sioux City exchange of Northwestern Bell.

The applicant does virtually all of its business within the South Sioux City service area, and does practically no business in the communities served by the Jackson exchange. In general, all of the business and social contacts of the applicant; Leland George; his son David George, who is an officer of the corporation; and Altena are in the South Sioux City area. Leland George's mailing address, which apparently also acts as the applicant's address, is in South Sioux City. Repairs to the farm equipment are generally made within the South Sioux City or Sioux City, Iowa, area. The school that Altena's children attend is within the service area of Northwestern Bell. In short, the applicant's only contact with Jackson is some property located there. One or fewer calls to Jackson per month are made by the applicant's employees, while the calls to the South Sioux City area average 15 to 20 per day. However, because the applicant has a Jackson phone, some mail is directed to it at a Jackson address, rather than the proper South Sioux City mailing address. As a result, some mail is misdirected and not received.

The calls made to locations outside the Jackson exchange do not require the payment of a long-distance fee. This is because, although the western half of the property is within the Jackson service area, the applicant has had a foreign exchange telephone service line (an "FX" line) through the Jackson exchange since the spring of 1987. The FX line enables the applicant's employees to make phone calls to South Sioux City without a

long-distance charge. Because of this fact, the applicant (actually, Leland George) also has a South Sioux City telephone number and is listed in the South Sioux City telephone directory. The charge for the FX hookup, which apparently is a flat charge for the extended service, is approximately $130 per month. That charge is in addition to the regular monthly charge for the Jackson telephone service.

The applicant applied with the Public Service Commission to be removed from the Jackson exchange and placed within the South Sioux City exchange. Parties potentially affected by the application were listed as Northeast and Northwestern Bell. After both of these parties failed to file a protest to the application, the applicant filed a motion before the Public Service Commission asking it to grant the relief requested in the application based on 291 Neb. Admin. Code, ch. 1, § 014.01 (1985). This section states that "failure to timely file a protest shall be construed as a waiver of opposition and participation in the proceeding."

The application came before the commission for hearing August 27, 1987. The applicant renewed its motion, which the commission noted and took under advisement. The commission then proceeded with the hearing, during which both the applicant and Northeast presented evidence. Upon the applicant's motion pursuant to § 014.01, the commission held that despite the telephone companies' failure to protest, under Neb. Rev. Stat. §§ 75-612 and 75-613 (Reissue 1986), the applicant was nevertheless required to present evidence at a hearing to establish its case, and its motion was overruled. Following the hearing, the commission, relying on § 75-613, which states that before granting an application the commission must find that the applicant is not receiving reasonably adequate service, denied the application based on a statement by Leland George that the existing telephone service is "okay."

The applicant filed a motion for rehearing, which was resisted by Northeast. The motion was overruled.

The applicant has appealed, assigning as error that (1) since no timely protest was filed by any of the parties to the action, the commission erred in overruling the applicant's motion to grant the relief requested in its application; (2) Northeast

waived its right to participate in the proceedings by failing to timely file a protest to the application with the commission; and (3) the commission erred in finding that the applicant did not meet its burden of proof with respect to the allegations of its application.

We find it unnecessary to discuss appellant's first two assignments of error. Upon a consideration of the entire record, we find that the commission's order was arbitrary and unreasonable and must be reversed.

Sections 75-612 and 75-613 provide in part as follows:

Any one . . . may file an application with the Public Service Commission to obtain the telephone service furnished in the exchange service area adjacent to the territory in which the applicant or applicants reside or operate.

§ 75-612.

Upon the completion of the hearing on such an application . . . the Public Service Commission may grant the application, in whole or in part, if the evidence establishes all of the following:

(1) That such applicant or applicants are not receiving . . . adequate exchange telephone service . . . . The fact that an applicant is required to pay toll charges for long distance telephone calls to an exchange service area adjacent to the territory in which the applicant resides or operates shall not be deemed to constitute inadequate exchange telephone service from the company furnishing such service;

(2) The revision of the exchange service area or areas required to grant the application will not create a duplication of facilities, is economically sound and will not impair the capability of the telephone company or companies affected to serve the remaining subscribers in any affected exchanges;

(3) The community of interest in the general territory is such that the public offering of each telephone company in its own exchange service area involved should include all the territory in its service area as revised by the commission's order; and

(4) The applicant or applicants are willing and will be required to pay such construction and other costs and rates as are fair and equitable and will reimburse the affected company for any necessary loss of investment in existing property as determined by the Public Service Commission.

§ 75-613.

From a consideration of the entire record, we find that it makes no sense for half of the applicant's property to be within one exchange and the other half to be within another exchange. Furthermore, forcing the applicant to bear the burden of paying for two phone services for the same property so that such property and its occupants may have full service to the general area comprising their community of interest is arbitrary and unreasonable.

It is true that "[t]he fact that an applicant is required to pay toll charges for long distance telephone calls to an exchange service area adjacent to the territory in which the applicant resides or operates shall not be deemed to constitute inadequate exchange telephone service from the company furnishing such service." § 75-613(1). However, we construe the additional $130 per month that the applicant must pay for the FX line to be a service fee, not a toll charge. We interpret a toll charge as contemplated in the statute as a charge for a single long-distance call, not a monthly flat fee for service. See, 18 The Oxford English Dictionary 202 (2d ed. 1989) (defining a toll as "[a] charge for a telephone call"); Webster's Third New International Dictionary, Unabridged 2405 (1981) ("a charge for a long-distance telephone call").

Therefore, the fact that the applicant is required to pay a monthly fee so that all of its property can be within the same telephone exchange strikes us as a justifiable reason for granting the relief requested. Had the residences in which Leland George and Altena live been built just one-fourth mile to the east, all of the residences on the property would have been within the same telephone exchange and within the exchange in which virtually all of the applicant's business is conducted.

We hold that the decision of the commission denying the

applicant's request to have all of its property placed within the service area of Northwestern Bell's South Sioux City exchange was unreasonable and arbitrary and should be reversed. The cause is remanded to the commission with directions to grant the application.

REVERSED AND REMANDED WITH DIRECTIONS.